UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------x
ANTHONY JOSEPH ALLEN,

                Plaintiff,

        v.

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.
-------------------------------------------------------x

**MEMORANDUM & ORDER**
23-CV-4897 (PKC)

PAMELA K. CHEN, United States District Judge:

Plaintiff Anthony Joseph Allen ("Plaintiff") brings this action under 42 U.S.C. § 405(g) ("Section 405(g)") against the Commissioner of Social Security ("Commissioner"). Plaintiff seeks judicial review of the decision of the Social Security Administration ("SSA") denying his claim for supplemental security income ("SSI"). The parties have cross-moved for judgment on the pleadings. (Dkts. 8, 10.) For the reasons set forth below, the Court grants Plaintiff's motion for judgment on the pleadings and denies the Commissioner's cross-motion. This case is remanded for further proceedings consistent with this Memorandum and Order.

## BACKGROUND

**I.    Factual Background & Procedural History**

In 2016, Plaintiff was involved in a car crash while driving on a highway. (Administrative Transcript, Dkt. 7 ("Tr.")[1] at 32.) During the crash, his car flipped over and caught on fire. (Tr. 32). Plaintiff sustained injuries to his back, shoulder, and lower extremities in the

---

[1] Page references prefaced by "Tr." refer to the continuous pagination of the Administrative Transcript (*see* Dkt. 7), appearing in the lower right corner of each page, and not to the internal pagination of the constituent documents or the pagination generated by the Court's CM/ECF docketing system.

crash. (Tr. 32–33.) Since 2016, Plaintiff has had three surgeries related to these injuries. (Tr. 448.) The first surgery, in 2017, was for his shoulder injury. (Tr. 448.) Next, in 2018, Plaintiff had a lumbar surgery for his back injury, and then in May 2021, he had another surgery for the same back injury. (Tr. 448.) Plaintiff reports ongoing pain stemming from these injuries, though he only takes over-the-counter pain relievers "for obvious reasons." (Tr. 34, 36, 237.) Plaintiff also reports that he has attention-deficit/hyperactivity disorder ("ADHD"). (Tr. 16, 51–52, 63, 67–68.)

Plaintiff filed an application for SSI on November 22, 2020, alleging disability beginning January 1, 2020 due to injuries sustained in the car crash. (Tr. 13, 32, 46.) SSA initially denied Plaintiff's claim on April 14, 2021. (Tr. 46.) SSA denied Plaintiff's claim again upon reconsideration on August 3, 2021. (Tr. 61.) At Plaintiff's request, on January 25, 2022, Administrative Law Judge ("ALJ") Patrick Kilgannon held a telephonic hearing at which Plaintiff, his counsel, and a Vocational Expert ("VE") appeared. (Tr. 13, 28.) On May 4, 2022, the ALJ issued a decision finding that Plaintiff was not disabled within the meaning of the Social Security Act ("the Act"). (Tr. 23.) The Appeals Council denied Plaintiff's request for review of the ALJ's decision on April 28, 2023. (Tr. 1, 5.) On June 29, 2023, Plaintiff timely commenced this action.[2] (Compl., Dkt. 1.)

---

[2] Section 405(g) provides that:

> [a]ny individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, . . . may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner of Social Security may allow.

42 U.S.C. § 405(g). "Under the applicable regulations, the mailing of the final decision is presumed received five days after it is dated unless the claimant makes a reasonable showing to the contrary." *Kesoglides v. Comm'r of Soc. Sec.*, No. 13-CV-4724 (PKC), 2015 WL 1439862, at

2

## II.     The ALJ's Decision

The Commissioner employs a five-step inquiry to evaluate SSI claims.  *See McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014); *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (citation omitted) (explaining that plaintiff bears the burden of proof at the first four steps of the inquiry; the Commissioner bears the burden at the final step).  At step one, the ALJ must determine whether the claimant is engaging in substantial gainful activity.  *Talavera*, 697 F.3d at 151 (citation omitted).  Here, the ALJ found that the claimant had not done so since November 22, 2020, the application date.  (Tr. 15.)

At step two, the ALJ must determine whether claimant has a medically determinable impairment, or combination of impairments, that is "severe."  *Talavera*, 697 F.3d at 151 (citation omitted).  Here, the ALJ determined that the claimant suffered from the following severe impairments: lumbar degenerative disc disease status-post fixation of bilateral pars defects, bilateral shoulder degenerative joint disease status-post arthroscopic repairs, and morbid obesity. (Tr. 16.)  The ALJ further found that those impairments significantly limited Plaintiff's ability to perform basic work activities.  (Tr. 16)  Although Plaintiff alleged several other disabilities, including hypothyroidism, vitamin D deficiency, and hypertriglyceridemia, the ALJ found these disabilities to be "nonsevere," reasoning that Plaintiff experienced no more than "mild limitations" in his ability to perform basic work activities as a result of them.  (Tr. 16.)  Furthermore, the ALJ found no evidence to support Plaintiff's allegation of ADHD, pointing to a lack of support in the

---

*3 (E.D.N.Y. Mar. 27, 2015) (citing, *inter alia*, 20 C.F.R. §§ 404.981, 422.210(c)).  Here, the Commissioner's decision became final when the Appeals Council denied review on April 28, 2023.  Plaintiff commenced this action on June 29, 2023—62 days after the Appeals Council denied review.  Therefore, this action is timely.

3

treatment record, a lack of objective clinical signs or symptoms, the absence of medication to treat the disorder, and Plaintiff's "alert" conduct during various exams. (Tr. 16.)

At step three, the ALJ considers whether the claimant's impairment meets or medically equals one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(a)(4)(iii); *see also* 20 C.F.R. pt. 404, subpt. P, app. 1. Here, the ALJ determined that Plaintiff's impairment did not meet the criteria. (Tr. 16.) The ALJ explained that the "requisite criteria" for the listed impairments are not reflected in Plaintiff's medical records and that none of Plaintiff's examining physicians had stated findings that would satisfy the requirements of those impairments. (Tr. 16)

At step four, the ALJ must determine the claimant's residual functioning capacity ("RFC"). This requires determining whether the claimant has the RFC to perform the requirements of his past relevant work. *Talavera*, 697 F.3d at 151 (citation omitted). In this case, the ALJ noted that Plaintiff had no past relevant work. (Tr. 21.) Finally, at step five, the ALJ must determine whether the claimant is able to do any other work considering his RFC, age, education, and work experience. *Talavera*, 697 F.3d at 151 (citation omitted). Here, the ALJ determined, based on a variety of factors, that Plaintiff had the RFC "to perform sedentary work as defined in 20 CFR 416.967(a) except that includes the ability to lift, carry, push or pull ten pounds frequently, stand/walk two hours and sit six hours in an eight-hour workday, with normal breaks, and can occasionally climb, balance, stoop, kneel, crouch and crawl and can occasionally reach overhead bilaterally." (Tr. 16.) Specifically, the ALJ found that Plaintiff could work as a lens inserter, an ink printer, or a carding machine operator. (Tr. 22.)

4

**STANDARD OF REVIEW**

Unsuccessful claimants for disability benefits under the Act may bring an action in federal district court seeking judicial review of the Commissioner's denial of their benefits. 42 U.S.C. §§ 405(g), 1383(c)(3). In reviewing a final decision of the Commissioner, the court's role is "limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera*, 697 F.3d at 151 (quoting *Lamay v. Comm'r of Soc. Sec.*, 562 F.3d 503, 507 (2d Cir. 2009)). "Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013) (alterations and internal quotation marks omitted) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). In determining whether the Commissioner's findings were based upon substantial evidence, "the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn." *Id.* (citation omitted). However, "it is up to the agency, and not th[e] court, to weigh the conflicting evidence in the record." *Clark v. Comm'r of Soc. Sec.*, 143 F.3d 115, 118 (2d Cir. 1998). If there is substantial evidence in the record to support the Commissioner's findings as to any fact, those findings are conclusive and must be upheld. 42 U.S.C. § 405(g); *see also Cichocki v. Astrue*, 729 F.3d 172, 175–76 (2d Cir. 2013).

**DISCUSSION**

**I.    The ALJ Failed to Adequately Develop the Record**

"Before determining whether the Commissioner's final decision is supported by substantial evidence under 42 U.S.C. § 405(g), 'the court must first be satisfied that the ALJ provided plaintiff with a full hearing under the Secretary's regulations and also fully and

5

completely developed the administrative record.'" *Ajibose v. Colvin*, No. 15-CV-3346 (PKC), 2016 WL 8711342, at *7 (E.D.N.Y. Sept. 30, 2016) (internal quotation marks omitted) (quoting *Scott v. Astrue*, No. 09-CV-3999 (KAM), 2010 WL 2736879, at *12 (E.D.N.Y. July 9, 2010)); *see also Reynoso v. Comm'r of Soc. Sec.*, No. 21-CV-6706 (PKC), 2023 WL 2632498, at *5 (E.D.N.Y. Mar. 24, 2023) ("As a threshold matter, this Court must independently consider the question of whether the ALJ failed to satisfy his duty to develop the [r]ecord." (quotation omitted)). Even if a plaintiff is represented by counsel, "it is the well-established rule in our circuit 'that the social security ALJ, unlike a judge in a trial, must on behalf of all claimants . . . affirmatively develop the record in light of the essentially non-adversarial nature of a benefit's proceeding.'" *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quoting *Lamay*, 562 F.3d at 508–09); *see also Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir. 1996). As part of this duty, an ALJ must make all reasonable efforts to obtain medical opinions from a treating source, including sending a follow-up request if the first attempt fails. *See* 20 C.F.R. § 404.1512(b)(1)(i). Notably, "[m]edical opinions are more than mere treatment notes." *Adamu v. Comm'r of Soc. Sec.*, No. 21-CV-1936 (PKC), 2024 WL 1259242, at *3 (E.D.N.Y. Mar. 25, 2024) (quoting *Brown v. Comm'r of Soc. Sec.*, No. 20-CV-5959 (KAM), 2023 WL 8828653, at *5 (E.D.N.Y. Dec. 21, 2023)). Medical opinions "must 'explicitly address [the] claimant's limitations and RFC." *Id.* (quoting *Reginald R. v. Comm'r of Soc. Sec.*, No. 21-CV-6326 (CJS), 2023 WL 5608869, at *10 (W.D.N.Y. Aug. 30, 2023)).

Here, the Court finds that the ALJ insufficiently developed the record by failing to make every reasonable effort to obtain medical opinions from Plaintiff's treating physicians. Plaintiff filed his SSI application after March 27, 2017, and so it is not subject to the "treating physician rule." *Reynoso*, 2023 WL 2632498, at *5. "Nonetheless, there is a growing consensus amongst courts applying the new regulations that an ALJ's obligation to develop the record still requires

6

her to obtain the opinion of a claimant's treating physician." *Id.*; *see also Ayala v. Kijakazi*, No. 20-CV-09373 (RWL), 2022 WL 3211463, at *35–36 (S.D.N.Y. Aug. 9, 2022) ("Under the new regulations, courts often find that an informed decision could not be reached where an ALJ failed to obtain opinion evidence from the plaintiff's long-term treating physicians[.]") (collecting cases); *Pomales v. Acting Comm'r of Soc. Sec.*, No. 22-CV-6009 (AEK), 2023 WL 6240627, at *6 (S.D.N.Y. Sept. 26, 2023) (collecting cases).

In this case, the ALJ did not obtain medical opinions from any of Plaintiff's treating physicians. (*See generally* Tr.) The treatment notes that the ALJ did have from Plaintiff's treating physicians did not "explicitly address [Plaintiff's] limitations and RFC." *Adamu*, 2024 WL 1259242, at *3; (*see generally* Tr. 346–552). At minimum, the ALJ should have sent medical opinion requests to all of Plaintiff's recent treatment providers, and should have sent follow-up requests if the initial requests were ignored. *See Skartados v. Comm'r of Soc. Sec.*, No. 20-CV-3909 (PKC), 2022 WL 409701, at *4 (E.D.N.Y. Feb. 10, 2022) ("[A]n ALJ must make an initial request for medical opinions and, if no opinion is received, make a follow-up request between 10 and 20 days after the initial request." (citing *Prieto v. Comm'r of Soc. Sec.*, No. 20-CV-3941 (RWL), 2021 WL 3475625, at *10–11 (S.D.N.Y. Aug. 6, 2021))). He did not do so. (*See generally* Tr.) By failing to do so, the ALJ failed to sufficiently develop the record.

The Commissioner argues that the ALJ "satisfied any obligation to try and obtain opinions from Plaintiff's medical providers" by including medical opinion forms when requesting records from Plaintiff's treating doctors. (Comm'r's Br., Dkt. 10-1 at 21.) However, these forms were only sent to some of Plaintiff's treating physicians. For example, though a request for evidence was sent to Northwell Health Neurosurgery, the request did not contain a medical opinion form. (Tr. 314–17.) In addition, the ALJ did not request a medical opinion from Dr. Krishnan at Island

7

Interventional Pain Management, who treated Plaintiff for his back pain after this most recent surgery. (Tr. 496–503.) Though the ALJ did send forms requesting medical opinions to Professional Physical Therapy and South Bay Medical (Tr. 328–33, 339–40), neither of those providers ultimately submitted the requested opinions (*see generally* Tr.). And when they failed to do so, the ALJ did not send follow-up requests for medical opinions. (*See generally* Tr.) As a result, the ALJ had no medical opinions from any of Plaintiff's treating physicians when adjudicating Plaintiff's SSI application. The ALJ's failure to develop medical opinion evidence from Plaintiff's treating physicians constitutes a failure to adequately develop the record, and as a result, Plaintiff's case must be remanded for further consideration.

**II.     The ALJ Failed to Support the RFC Analysis with Substantial Evidence**

    **A.     The ALJ Improperly Relied on the Opinion of a Consultative Examiner Who Did Not Consider Plaintiff's Treatment Records**

While failure to develop the record is sufficient grounds for remand, the Court also finds that the ALJ failed to support the RFC with substantial evidence; i.e., "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Selian*, 708 F.3d at 417 (quoting *Richardson*, 402 U.S. at 401); *see also Talavera*, 697 F.3d at 151. Medical records alone cannot provide substantial evidence for an RFC determination; an "ALJ's RFC determination must be supported by a medical opinion in the record at that time." *Pearson v. Comm'r of Soc. Sec.*, No. 20-CV-3030 (AMD), 2021 WL 3373132, at *4 (E.D.N.Y. Aug. 3, 2021). "In general, an ALJ should not rely heavily on the findings of a single consultative physician and non-examining physicians." *Adamu*, 2024 WL 1259242, at *3 (collecting cases).

The ALJ erred in relying on the opinion of a consultative examiner who did not have access to, or did not review, Plaintiff's treatment notes. Courts in this district have held that "where a consultative examiner did not review important medical records, the consultative examiner's

8

opinion cannot constitute . . . substantial evidence to support an RFC." *Benitez v. Comm'r of Soc. Sec.*, No. 20-CV-5026 (RWL), 2021 WL 4239244, at *17 (S.D.N.Y. Sept. 17, 2021). Here, as described above, the ALJ did not have any medical opinion evidence from any of Plaintiff's treating physicians. And at the time the ALJ issued his opinion, he did not have any medical opinions from any physician—treating or consultative—who had examined Plaintiff after his May 13, 2021, spinal surgery. (*See generally* Tr.) As a result, the ALJ relied upon the opinions of consultative examiners Dr. Andrea Pollack and Dr. Paul Herman.[3] (Tr. 20–21)

There is no record of consultative examiner Dr. Pollack having been transmitted Plaintiff's prior treatment notes. Furthermore, though Dr. Pollack references Plaintiff's medical history generally (recounting the car crash and his past surgeries, for example) (Tr. 322), she makes no specific mention of treatment notes or other records (Tr. 322–25). The ALJ failed to acknowledge that Dr. Pollack wrote her opinion seemingly without reference to Plaintiff's treatment notes. (Tr. 20–21.) Put simply, a one-time consultative exam absent the reference point that treatment notes provide is unlikely to serve as an adequate evaluation of Plaintiff's longitudinal health and is grounds for remand. *See Benitez*, 2021 WL 4239244, at *15; *see also Figueroa v. Saul*, No. 18-CV-4534 (JLC), 2019 WL 4740619, at *26 (S.D.N.Y. Sept. 27, 2019) (opinion of consultative examiner who did not review all relevant medical information was not substantial evidence in support of ALJ's RFC determination); *Citro v. Colvin*, No. 16-CV-6564 (BCM), 2018 WL 1582443, at *14 (S.D.N.Y. Mar. 28, 2018) (similar); *Garcia v. Comm'r of Soc. Sec.*, No. 22-CV-2449 (FB), 2023 WL 4904751, at *3 (E.D.N.Y. Aug. 1, 2023) (similar); *Pinnock v. Comm'r of Soc. Sec.*, No. 22-CV-6858 (AMD), 2024 WL 1308597, at *8 (E.D.N.Y. Mar. 27, 2024) (similar).

---

[3] Dr. Pollack conducted an internal medicine examination; Dr. Herman conducted a psychiatric examination. (Tr. 20–21.) Here, it is not clear that either of these examiners had access to Plaintiff's treatment notes.

9

This is precisely the issue with Dr. Pollack, who only examined Plaintiff once and seemingly did not have access to his treatment records.

### B.     The ALJ Improperly Cherry-Picked Evidence

In addition, the ALJ improperly cherry-picked evidence in finding that Plaintiff had the RFC to perform sedentary work.  "[An] ALJ may not 'cherry-pick' medical opinions, or selectively cite treating notes or diagnostic imaging that support the ALJ's own view while ignoring opinions and evidence that do not."  *Jones v. Saul*, No. 19-CV-5542 (LGS) (BCM), 2020 WL 5775525, at *12 (S.D.N.Y. Sept. 11, 2020), *R&R adopted*, 2020 WL 5775195 (Sept. 28, 2020).  In reaching his conclusion that Plaintiff had the RFC to perform sedentary work, the ALJ noted Dr. Pollack's findings from her April 2021 examination—namely, that Plaintiff had significant pain and various restrictions due to his injuries—but "also note[d] th[at Dr. Pollack's] exam took place prior to claimant's surgery, after which improvement was noted." (Tr. 21.)  In concluding that Plaintiff's condition improved after his May 2021 surgery, the ALJ ignored key parts of the treatment record, cherry-picking evidence to support his conclusion.  Notably, as a result of the ALJ's overall failure to develop the record, there is limited evidence about Plaintiff's condition after the May 2021 surgery. (*See generally* Tr.)  Indeed, the only evidence from that period of time are treatment records from the office of Dr. Pendleton, Plaintiff's surgeon (Tr. 448–83, 547–52), from Dr. Krishnan at Island Interventional Pain Management (Tr. 496–503), and from Plaintiff's primary care provider[4] (Tr. 504–46).  The treatment records from Dr. Pendleton's office do indicate that Plaintiff no longer "has pain in his legs when he walks" and that Plaintiff "has had complete resolution of radicular symptoms in his bilateral legs." (Tr. 550.)  However, these records also

---

[4] The records from Plaintiff's primary care provider relate to other medical issues (such as obesity and routine vaccinations) and do not bear on the issue of Plaintiff's injuries and surgical history as alleged here.

10

indicate that even after his May 2021 surgery, Plaintiff continued to experience "midline back pain that is worse when he is active." (Tr. 550.)  Indeed, Plaintiff sought treatment from Dr. Krishnan beginning in October 2021 due to "progressively worsening" lower back pain. (Tr. 497.)  Dr. Krishnan's records also indicate that Plaintiff had significant pain while at rest and that this pain worsened with activity. (*Id.*)  Thus, while it is, of course, possible that Plaintiff's leg pain was resolved by the May 2021 surgery, his back pain might have stayed the same or worsened thereafter.  The ALJ seemingly ignored these facts in concluding that Plaintiff's overall condition improved after the May 2021 surgery, especially Dr. Krishnan's treatment notes, such that the ALJ found that Plaintiff had the RFC to perform sedentary work that included, *inter alia*, lifting, carrying, pushing, or pulling ten pounds frequently, and standing/walking two hours and sitting six hours in an eight-hour workday. (Tr. 16, 20–21.)  Courts "frequently" remand when "an ALJ cherry-picks medical evidence in support of an RFC determination while ignoring or mischaracterizing evidence to the contrary." *Williams v. Kijakazi*, No. 20-CV-8469 (JLC), 2022 WL 799478, at *19 (S.D.N.Y. Mar. 16, 2022); *Goggins v. Kijakazi*, No. 23-CV-285 (PKC), 2024 WL 1259356, at *4 (E.D.N.Y. Mar. 25, 2024) (same).  Admittedly, it is difficult to tell what Plaintiff's condition has been since the May 2021 surgery since there are no medical opinions in the record from any doctors who have examined him in any capacity since that time.  But the lack of this relevant evidence in itself, as discussed, warrants remand.

## CONCLUSION

For the reasons set forth herein, the Court grants Plaintiff's motion for judgment on the pleadings and denies the Commissioner's cross-motion.  The Commissioner's decision is vacated, and this action is remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further

consideration consistent with this Memorandum and Order.  The Clerk of Court is respectfully requested to enter judgment and close this case.

SO ORDERED.

/s/ Pamela K. Chen
PAMELA K. CHEN
United States District Judge

Dated: August 29, 2024
      Brooklyn, New York